IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TONGKOU THAO,

                Plaintiff,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.

OPINION AND ORDER

17-cv-742-wmc

---

On January 18, 2013, plaintiff Tongkou Thao filed a Title II application for Disability Insurance Benefits ("DIB") under Sections 216(i) and 223(d) of the Social Security Act, alleging that he had been disabled since July 2, 2012 from a number of impairments, including cervical spondylosis, neck pain, migraine headaches, a mood disorder and a depressive disorder. On June 1, 2016, an Administrative Law Judge for the Social Security Administration issued a decision finding that Thao was disabled and eligible for DIB beginning on his 55th birthday, March 4, 2016, but not before that date. Thao now asks this court to reverse the adverse portion of the ALJ's decision and remand the case for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). For the reasons that follow, the court rejects Thao's arguments and affirms the Commissioner's determination that he was not disabled prior to March 4, 2016.

1

## BACKGROUND[1]

Thao applied for DIB on January 18, 2013, alleging disability since July 2, 2012. After the local disability agency denied his application initially and again on reconsideration, Thao had a hearing before Administrative Law Judge ("ALJ") John Pleuss, who issued a decision on August 4, 2014, in which he found that Thao was not disabled at any time from his alleged onset date through the date of the decision. (AR 113-125). The ALJ found that, although Thao had severe impairments that prevented him from performing any of his past work, he retained the residual functional capacity ("RFC") to perform a limited range of light work, and that, given his age, education and work experience, he could make a successful adjustment to a significant number of jobs that existed in the regional and national economy. In reaching that decision, the ALJ rejected favorable reports from plaintiff's treating physician, Dr. Frank Rubino, and treating psychiatrist, Dr. Andrew Cameron, finding for various reasons that neither opinion was entitled to much evidentiary weight.

After the adverse hearing decision, plaintiff obtained and submitted to the Appeals Council new statements from Dr. Rubino and Dr. Cameron. (AR 894, 896.) Without finding any error in the ALJ's decision, the Appeals Council found that these statements constituted "new and material evidence" that warranted remanding the case to the ALJ so that he could reconsider the opinion evidence and Thao's RFC in light of the doctors' new statements. (AR 131-32.)

---

[1] The following facts are drawn from the administrative record ("AR"). (Dkt. #7.)

On remand, ALJ Pleuss held a second administrative hearing, at which Thao was represented by counsel and testified. William Dingess, an impartial vocational expert, also testified at the hearing. On June 1, 2016, the ALJ issued a written decision again rejecting Thao's claim that he became disabled on July 2, 2012. (AR 17-29.) As in his first decision, he found that Thao retained the RFC to perform a limited range of light work and that the opinions of Dr. Cameron and Dr. Rubino were entitled to little weight. However, the ALJ found that Thao *was* disabled and entitled to Disability Insurance Benefits as of March 14, 2016. On that date, Thao turned 55, which meant he changed (for Social Security purposes) from a person "closely approaching advanced age" to a person of "advanced age." This, in turn, meant that Thao was disabled under the agency's Medical-Vocational Guidelines (known in Social Security parlance as "the grids"), which direct that an individual of advanced age who has a high school education but no transferable job skills and an RFC for light work is deemed "disabled" under the Social Security Act. Medical-Vocational Guidelines, 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 202.06.

In this action for judicial review, Thao seeks reversal and remand of the unfavorable portion of the ALJ's decision on the following grounds: (1) the ALJ failed to provide sound reasons for rejecting Dr. Cameron's opinion, which supports a finding that Thao suffers from a severe mental impairment; (2) the ALJ failed to properly evaluate the opinion from Thao's treating physician, Dr. Rubino; (3) the ALJ failed to account for Thao's severe headaches; and (4) the ALJ failed to properly determine Thao's onset date in accordance with Social Security Ruling 83-20.

## DISCUSSION

### I. Standard of Review

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993).

At the same time, the court must conduct a "critical review of the evidence" before affirming the Commissioner's decision, *Edwards*, 985 F.2d at 336. If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th 2006).

## II. Mental Impairment

Thao challenges the ALJ's finding that he did not have a severe mental impairment.[2] Under the Social Security Regulations, a "severe" impairment is one that significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1521(a). At the time of the ALJ's decision, the regulations required him to use a special framework to evaluate Thao's mental impairments and their severity by rating the impact that Thao's mental impairments had on four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).[3] Applying this framework to the evidence of record, the ALJ found that Thao had no limitations in any of these areas, with the exception of social functioning, in which Thao was mildly limited. Accordingly, the ALJ found that Thao's mental impairment was not severe. *See* 20 C.F.R. § 404.1520a(d)(1) (explaining that if degree of limitations is rated in first three functional areas as "none" or "mild" and fourth area is rated "none," then mental impairment typically found not severe).

---

[2] Although Thao initially frames this as a claim that the ALJ "failed to comply with the remand order" from the Appeals Council, the Court of Appeals for the Seventh Circuit has made clear that judicial review is confined to whether the ALJ's decision after remand is supported by substantial evidence. *See Skinner v. Astrue*, 478 F.3d 836, 841, 844–45 (7th Cir. 2007); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Accordingly, the court confines its review to whether substantial evidence supports the ALJ's conclusion that Thao's mental impairments were not "severe" impairments as that term is defined in the Social Security regulations, without regard to the Appeals Council's order.

[3] The agency recently revised the criteria for evaluating the severity of mental impairments. SSA, Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66147 (Sept. 26, 2016).

In support of his claim that his mental functioning is more limited than the ALJ found, Thao relies primarily on records and office notes from his treating psychiatrist, Dr. Andrew Cameron. On June 5, 2014, Dr. Cameron completed a Mental Impairment Questionnaire on which he stated that Thao had an adjustment disorder with depressed mood and a mood disorder due to medical issues, a Global Assessment of Functioning ("GAF") Score of 45,[4] "extreme" restrictions in his activities of daily living, and "marked" difficulties in social functioning. Assessing Thao's work capacity, Dr. Cameron opined that Thao was largely unlimited in his ability to meet the mental demands of unskilled or even semiskilled work, but that he would be absent more than three times a month and have little ability to work at a consistent pace without an unreasonable number and length of rest periods. (AR 881-86.)

Relying on 20 C.F.R. § 404.1527(c), Thao argues that the ALJ erred by failing to give Dr. Cameron's opinion great or even controlling weight, and that had he done so, he would have found that Thao had a severe mental impairment, if not total disability. Under § 404.1527(c)(2), the opinions of treating providers are generally entitled to greater weight than non-treating sources, and may sometimes even be entitled to "controlling" weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.[5] If

---

[4] This GAF score correlates with "[s]erious symptoms . . . or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. text revision 2000).

[5] The agency recently revised its rules for evaluating opinion evidence. *See* 20 C.F.R. § 404.1520c. However, the old rules still apply to claims filed before March 27, 2017.

the ALJ determines that the opinion is unsupported or inconsistent with the record, the ALJ may reject the opinion, but he must give "good reasons" for doing so. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). When an ALJ does not give a treating physician's opinion controlling weight, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ correctly determined that Dr. Cameron's opinion was not entitled to controlling or even great weight to the extent it purported to find that plaintiff had severe mental limitations because even Dr. Cameron *himself* did not hold that opinion. Notably, Cameron explained that Thao's functional limitations were *not* caused by any mental impairment but were due to his physical problems: "[Thao's] inability to work is not due to mental state, but is due to medical state. If he could work, he would do fine. Physically, he cannot work." (AR 885.) Dr. Cameron reiterated this opinion in follow-up letters, stating that "[t]he negative effect on [Thao's] mood due to his physical disability has been profound (AR 894)," and that "so much of [Thao's] depression is tied to his physical pain and inability to work and support his family." (AR 1219.)

Because Dr. Cameron did not provide any specific work-related functional limitation caused by Thao's mental impairment -- which was the doctor's area of expertise -- the ALJ reasonably gave little weight to Dr. Cameron's opinion. (AR 23.) It is true, as Thao points out, that Dr. Cameron diagnosed mental impairments, but a mere diagnosis

7

is not evidence of disability or impairment severity. *See, e.g., Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("The issue in the case is not the existence of these various conditions of [the claimant's] but their severity and, concretely, whether . . . they have caused her such severe pain that she cannot work full time.") Likewise, the ALJ was not required to give any weight to Dr. Cameron's GAF score of 45, especially where the doctor's report and letters made clear that Thao's reduced functional capacity was because of physical, not mental, impairments. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (noting that "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score" and finding that ALJ could properly disregard GAF score in favor of psychologist's narrative finding that plaintiff had no significant mental impairments). In sum, Dr. Cameron's acknowledgement that Thao's limitations were caused by his physical impairments and that he would "do fine" at work were it not for his physical condition was a good reason for the ALJ to afford little weight to Cameron's report to the extent it purported to assess Thao's mental limitations. *See Campbell v. Astrue*, 627 F. 3d 299, 306 (7th Cir. 2010) (ALJ must offer "good reasons" for discounting treating physician's opinion) (citing 20 C.F.R. § 404.1527(d)(2)).

Indeed, substantial evidence in the record supports the ALJ's finding that Thao's mental impairments were not severe. As the ALJ noted, Thao did not report any mental limitations in his initial functional report or at either of his administrative hearings; Dr. Cameron's treatment notes did not document any acute findings related to mental illness but instead described plaintiff as having adequate attention, judgment, insight, and

8

memory; and Dr. Cameron indicated that Thao had no mental limitations that would affect his ability to work. All of these provided the ALJ with sound reasons to give little weight to Dr. Cameron's opinion and to conclude that Thao did not have a severe mental impairment.

## III. Dr. Rubino's Opinion

Thao next argues that the ALJ erred in discounting the opinion of Dr. Rubino, his treating general practitioner. On June 9, 2014, Dr. Rubino completed a Residual Functional Capacity Questionnaire on which he indicated that Thao could not perform any job on a sustained basis because of his chronic neck pain. More specifically, he opined that Thao would be able to sit or stand for no more than 10 minutes at a time before needing a change of position, would require frequent periods of walking around during the workday, would need to lie down every hour, could lift a maximum of 10 pounds and would be absent more than three times a month. (AR 889-92.) He also opined that Thao's pain constantly interfered with attention and concentration and his medication caused drowsiness. (AR 890.) Dr. Rubino indicated that these restrictions applied as of 2011. (AR 892.)

The ALJ discussed Dr. Rubino's opinion in detail, devoting three pages of his decision to explaining why he was giving it little weight. (AR 24-26.) Specifically, the ALJ observed that:

- although Dr. Rubino had treated Thao over a long period of time, he did not always see him frequently and instead referred him out to specialists;

- records of treatment visits did not show that Thao had any weakness or acute abnormalities in his gait, posture, or ability to sit;

- there were no ongoing acute flare-ups documented in the treatment notes to support the extreme restrictions endorsed by Dr. Rubino;

- Dr. Rubino's treatment notes showed that in December 2015, Thao appeared healthy and in no acute distress and mentioned his neck pain only at the very end of the visit, and in January 2016, Thao described only intermittent upper extremity symptoms and admitted he was taking only Vicodin for his pain and using it only 2-3 times a week;

- Thao testified that he lied down "sometimes" as opposed to hourly;

- Dr. Rubino's opinion that Thao's limitations applied as of 2011 was inconsistent with Thao's ability to work in 2011 and 2012; and

- treatment records from Dr. Joseph, a rehabilitation specialist, and Dr. Klein, a pain specialist, failed to document objective findings to support the extreme limitations endorsed by Dr. Rubino.

In the face of this thorough analysis, Thao's contention that the ALJ failed to provide good reasons for rejecting Dr. Rubino's report is wholly unconvincing. The ALJ addressed all of the factors deemed relevant in the regulation, taking into account the length of Dr. Rubino's treating relationship with claimant, frequency of examination, his area of specialty, the supportability of the opinion and its consistency with the record as a whole. *See* 20 C.F.R. § 404.1527(c). As the ALJ explained, there was a wealth of evidence in the record that contradicted Dr. Rubino's extremely restrictive assessment of Thao's abilities, including the objective medical evidence, Thao's own testimony and his work history. Thao does not really challenge any of these findings, except to point out certain pieces of evidence that he says the ALJ overlooked or misstated. Having considered these arguments, the court finds none of them persuasive. Thao's objections are picayune, and

in any event an ALJ need not discuss every piece of evidence in his decision so long as he does not ignore an entire line of evidence favorable to his ruling. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) The ALJ did not do that here. The court finds no error in the ALJ's evaluation of Dr. Rubino's opinion.

## IV. Headaches

Thao argues that the ALJ erred by failing in the RFC assessment to include limitations to account for Thao's headaches, which the ALJ found to be a severe impairment. This argument is contradicted by the record. Although the ALJ did not discuss Thao's headaches at length in his June 2016 opinion, he indicated that he was incorporating his findings from his 2014 decision by reference unless otherwise indicated. (AR 17.) In his 2014 decision, the ALJ found that Thao had occasional headaches and that "the claimant's chronic pain and headaches justify the acknowledgement that it is likely that he will be off task 5% of the workday." (AR 123.) The ALJ retained the off-task limitation in his June 2016 RFC, finding that plaintiff would need a job allowing him to be off task for about 5-10% of the workday in additional to regularly-scheduled work breaks. (AR 21.) Absent any indication from the ALJ that he was revising his 2014 findings concerning Thao's headaches, the only reasonable inference to draw is that, as in 2014, the off-task limitation was meant to account for Thao's chronic pain and headaches. In other words, contrary to Thao's argument, the ALJ expressly accounted for his headaches in crafting the RFC.

11

## V. Onset Date

Finally, Thao argues that once the ALJ found that he was disabled as of his 55th birthday, the ALJ was obligated under Social Security Ruling 83-20 "to evaluate the case for the earliest possible onset date." (Pl.'s Br. (dkt. #10) 44.) SSR 83-20 instructs that establishing the "onset date" of disability is important because it may affect the period for which the individual can be paid or if he can be paid at all. Titles II and XVI: Onset of Disability, Social Security Ruling 83–20, 1983 WL 31249 (S.S.A.). Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. *Id*. The ruling further provides that in cases of "slowly progressive impairments" in which the alleged onset and date last worked are far in the past, it may be necessary to infer the onset date from medical and other evidence that describe the disease process. *Id.*

Here, the ALJ determined that the evidence of record did not support Thao's allegation that he became disabled on his alleged onset date of July 2, 2012. Although the ALJ found that Thao became disabled on March 4, 2016, his 55th birthday, he did so not because of any deterioration in Thao's condition, but because the Social Security Administration presumes that there are few jobs available for a 55-year-old with a high school education, no transferable job skills, and an RFC for at most light work. *See* AR 28; Medical-Vocational Guidelines, 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 202.06. In other words, the ALJ found that Thao's 55th birthday was "the earliest possible onset date." In the absence of any showing by Thao that there was a date between July 2, 2012 and March 4, 2016 on which he became disabled, there is simply no basis to remand this case

for further evaluation of the onset date. *Accord Perkins v. Chater*, 107 F.3d 1290, 1295-96 (7th Cir. 1997) (where ALJ found that plaintiff's limitations were "relatively constant" but found claimant became disabled on 55th birthday solely because he reached age at which he qualified as "disabled" under Medical-Vocational Guidelines, ALJ was not required to determine whether any earlier onset date existed); *Bugella v. Astrue*, No. 07-C-269-C, 2007 WL 5613518, at *11 (W.D. Wis. Nov. 21, 2007) (declining to remand for further consideration of onset date where plaintiff failed to propose clear alternative to either her alleged onset date or the date selected by ALJ, where evidence in record reasonably supported the ALJ's decision).

## ORDER

IT IS ORDERED that the decision of defendant Andrew M. Saul, Commissioner of Social Security, is AFFIRMED and plaintiff Tongkou Thao's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 25th day of September, 2019.

            BY THE COURT:

            /s/
            _____
            WILLIAM M. CONLEY
            District Judge